UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MYA MCGHAW**,  Case No. 1:15 CV 9
**ON BEHALF OF MLM**,

      Plaintiff,  Judge Patricia A. Gaughan

        Magistrate Judge James R. Knepp, II

      v.  REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

## INTRODUCTION

Plaintiff Mya McGhaw, on behalf of her minor child MLM, appeals the administrative denial of child supplemental security income ("SSI") benefits under 42 U.S.C. § 1383. The district court has jurisdiction over this case under 42 U.S.C. § 1383(c)(3). The matter has been referred for report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated January 5, 2015). For the reasons given below, the Court recommends affirming the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed MLM's application for SSI on June 18, 2012, alleging a disability onset date of February 8, 2009. (Tr. 129-34). Her application was denied initially (Tr. 91-97) and on reconsideration (Tr. 101-07). Plaintiff, represented by counsel, requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 108). Plaintiff and MLM testified at the hearing; after which the ALJ found MLM not disabled. (*See* Tr. 12-24, 29-65). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On January 2, 2015, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

*Testimony and Personal Background*

At the time of the hearing, MLM was eight years old and about to begin the third grade. (Tr. 36-37). MLM testified he stayed inside most days because his friends had moved out of the neighborhood. (Tr. 37). MLM stated that although he got good grades, he had problems completing his work and he relied on his mother's help. (Tr. 37-38). He stated he got mad at other students and teachers while at school because they teased him about his inability to complete his work. (Tr. 39). However, MLM stated he did have some friends at school and sometimes got along with his three brothers. (Tr. 39, 41, 46). He testified he had a lot of energy, trouble going to sleep at night, and no problems taking care of himself. (Tr. 42-43). MLM stated his medications did not really help and he had a problem with anger. (Tr. 43).  MLM also confirmed he had been suspended from school several times for fighting, biting a teacher, and throwing chairs. (Tr. 47-48).

Plaintiff testified MLM got along with his brothers about half the time and was constantly loud. (Tr. 51). She also testified that MLM's medication was only mildly effective at controlling his behavior. (Tr. 52-53). She stated she had been called to the school on so many occasions to pick up MLM for bad behavior that she was fired from her job. (Tr. 54). She commented that MLM was solitary and did not like to be bothered by anyone. (Tr. 55). She noted MLM threw fits, yelled, talked back, and did not listen well. (Tr. 60-61).  Plaintiff testified she helped MLM with his school work about half the time but mentioned he was easily distracted. (Tr. 57).

2

*Function Reports*

On a June 2012 function report completed by Plaintiff, she remarked MLM was easily angered when she gave him direction. (Tr. 146). She also stated MLM had no friends his age, could not make friends, and did not get along well with teachers. (Tr. 149). She noted he had difficulty writing long-hand, writing simple stories, and telling time. (Tr. 147). He was also unable to finish things he started, keep busy on his own, or complete his chores. (Tr. 151). She commented that MLM had difficulty brushing his teeth, choosing his own clothes, picking up his toys, doing what he was told, and accepting criticism or correction. (Tr. 150).

In a second report a month later, Plaintiff noted MLM was fighting with his brothers and had difficulties with speech. (Tr. 164). She again noted his lack of friends and his tendency to fight, talk back, and be rude. (Tr. 164-65). But she related that MLM was sometimes capable of cleaning his room and doing other chores and could remember TV programs he had watched or books he had read. (Tr. 164-65). Plaintiff also stated that the school suggested she homeschool MLM because of his frequent suspensions. (Tr. 187).

*Education Records*

In an unsigned questionnaire, MLM's second grade teacher noted he was in regular education and was performing adequately in reading, math, and writing. (Tr. 177). On the topic of acquiring and using information, she reported no problems except that MLM had a slight problem participating in class discussions and expressing ideas in written form. (Tr. 178). She also noted MLM had obvious problems with his ability to work without distracting either himself or others. (Tr. 179). She commented his behavior interferes with his completion of tasks. (Tr. 179). On interacting and relating with others, she noted obvious problems in his ability to play cooperatively, make and keep friends, ask permission appropriately, and respect authority. (Tr.

3

180). She noted a very serious problem with his ability to appropriately express his anger and mentioned a low frustration level. (Tr. 180). However, she remarked MLM was "very capable [of doing] the work [but] everything depends on his mood." (Tr. 180). The teacher also noted she was capable of understanding all of his speech. (Tr. 181). Finally, she remarked MLM was calmer and less easily frustrated when on medication. (Tr. 183).

MLM was suspended on March 20, 2013, for throwing chairs, taking the teacher's cell phone, and biting the teacher; however the notice of suspension indicates these were not expellable offenses. (Tr. 196). His attendance record showed 27 days missed due to out of school suspension. (Tr. 200). Yet, his grade report reflected a range of grades from A to D and that he was progressing to the third grade. (Tr. 199).

*Relevant Medical Evidence*

In November 2011, MLM saw Veronica Crowe-Carpenter, CNP, for evaluation of Attention Deficit Hyperactivity Disorder ("ADHD") and anger issues. (Tr. 240-44). On this visit, Ms. Crowe-Carpenter found MLM to be alert, cooperative, talkative, and very active. (Tr. 242). A month later, MLM's mental status exam showed he had normal speech rate and content, normal eye contact, appropriate affect, was cooperative, and followed instructions in an age-appropriate manner. (Tr. 229). Ms. Crowe-Carpenter prescribed MLM Adderall for his ADHD. (Tr. 229).

On January 31, 2012, MLM underwent a diagnostic assessment at Murtis Taylor at the request of his teacher because he did not stay focused, disrupted the class, and was aggressive towards his peers. (Tr. 328). MLM was assigned a Global Assessment of Functioning ("GAF") score of 65.[1] (Tr. 339). Murtis Taylor recommended further treatment, "to decrease symptoms of

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of*

4

anger, oppositional behavior, inattention, impulsivity, [and] hyperactivity". (Tr. 339). Plaintiff did not follow up at Murtis Taylor.

Plaintiff returned to Ms. Crowe-Carpenter on April 27, 2012, where she complained MLM still had serious problems acting out at both home and at school. (Tr. 218). Plaintiff stated she discontinued using the Adderall because it caused MLM to vomit; however she requested to try another medication. (Tr. 218). Ms. Crowe-Carpenter prescribed Concerta. (Tr. 219). A month later, Plaintiff reported there were no side effects with the Concerta and MLM had done well in school that week. (Tr. 215).

In June 2012, Plaintiff reported no side effects of the Concerta but complained that MLM was having difficulty sleeping; Ms. Crow-Carpenter prescribed Clonidine to assist him. (Tr. 212-13). Plaintiff returned to Ms. Crowe-Carpenter in October 2012 and reported MLM was performing acceptably academically but was still having behavior problems at school. (Tr. 265). However, she reported while MLM was occasionally combative with siblings, his home behavior was otherwise fair. (Tr. 265). A month later, Ms. Crowe-Carpenter changed MLM's medication to Vyvanse after reports of behavior problems at school and at home. (Tr. 256). Throughout these visits MLM's mental status exams were normal. (Tr. 212, 215, 265).

In November 2012, Ms. Crowe-Carpenter completed a Childhood Disability Evaluation Form on behalf of MLM. (Tr. 324). She opined he had a less than marked limitation in moving about and manipulating objects but had marked limitations in attending and completing tasks, caring for himself, and health and physical well-being. (Tr. 324). She also found MLM had extreme limitations in acquiring and using information and interacting and relating to others. (Tr.

---

*Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* at 34.

5

324). She commented that although MLM was on target academically he had severe behavior problems, including not listening to authority figures, fighting with peers, tantrums, and school suspensions. (Tr. 325). She also noted that two different behavioral medications had "shown no behavior improvement." (Tr. 325).

In December 2012, Ms. Crowe-Carpenter continued Vyvanse as it had no reported side effects and Plaintiff noted Clonidine was successful at helping MLM sleep. (Tr. 364). Plaintiff reported MLM's home behavior was "OK" but he was still getting into fights at school. (Tr. 364). In April 2013, Plaintiff reported MLM's academics were good but his behavior at school was still out of control. (Tr. 354). On June 18, 2013, Plaintiff reported MLM made the merit roll at school but was still exhibiting aggressive behavior toward other students. (Tr. 343). However, she stated his home behavior was "better controlled with parent's urging." (Tr. 343). Again, MLM's mental status examinations were normal. (Tr. 343, 354, 364-65).

That same day Ms. Crowe-Carpenter completed a second Childhood Disability Evaluation Form where she opined MLM had less than marked limitations in acquiring and using information, moving about and manipulating objects, and caring for himself; and no limitation in health and physical well-being. (Tr. 304). She also found he had a marked limitation in attending and completing tasks and an extreme limitation in interacting and relating to others. (Tr. 304). Ms. Crowe-Carpenter supported her opinion by noting MLM had experienced behavioral issues since he was two years old, had aggressive behavior with siblings and playmates, was destructive with toys, and, despite the use of medications, his behavior never improved. (Tr. 305).

*Consultative Examination*

On August 30, 2012, MLM underwent a speech evaluation by Kathryn Bartow, a speech and language pathologist. (Tr. 247-50). She found his receptive, expressive, and total language to

6

be within normal limits, although his articulation skills were moderately to severely delayed. (Tr. 250). She recommended MLM continue with speech sound development in speech therapy. (Tr. 250).

*State Agency Reviewers*

Upon initial review, MLM was found to have less than marked limitations or no limitations in all functional categories. (Tr. 70-71). Upon reconsideration, Lisa Lynch, M.A., Aracelis Rivera, Psy.D., and Anahi Ortiz, M.D., opined MLM had less than marked limitations in acquiring and using information, attending and completing tasks, and caring for himself; remarking the evidence indicated he could respond to instructions in an age appropriate manner. (Tr. 81). The reviewers also opined he had marked limitations in interacting and relating to others because of indications that he acted out both at home and in the classroom. (Tr. 81-82).

*ALJ Decision*

After the hearing, the ALJ found MLM was not disabled. (Tr. 12-24). He found MLM had the severe impairments of ADHD and speech/language developmental delays, but they did not meet or medically equal a listed impairment. (Tr. 15-18). The ALJ further found MLM had a marked limitation in interacting and relating to others; less than marked limitations in acquiring and using information, attending and completing tasks, and caring for himself; and no limitations in moving and manipulating objects or health and well-being. (Tr. 18-24).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial

7

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). In the case of a claimant under the age of 18, the Commissioner follows a three-step evaluation process – found at 20 C.F.R. § 416.924(a) – to determine if a claimant is disabled:

1. Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2. Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which causes no more than minimal functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3. Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine, under step three of the analysis, whether an impairment or combination of impairments functionally equals a listed impairment, the minor claimant's functioning is assessed in six different functional domains. 20 C.F.R. § 416.926a(b)(1). This approach, called the "whole child" approach, accounts for all the effects of a child's impairments singly and in combination. SSR 09-1P, 2009 WL 396031, at *2. If the impairment results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning, then the impairment is of listing-level severity and therefore functionally equal to the listings. 20 C.F.R. § 416.926a(a).

A "marked" limitation is one that is more than moderate but less than extreme, and interferes "seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). The six functionality domains are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

## DISCUSSION

Plaintiff argues the ALJ erred when (1) he concluded MLM did not have an extreme limitation in interacting or relating to others and a marked limitation in attending and completing tasks; and when (2) he failed to make a proper credibility determination. (Doc. 13, at 10-18). Although not stated as an assignment of error, the Plaintiff also disagreed with the ALJ's weighing of the opinions of Ms. Crowe-Carpenter, arguing he failed to adequately explain why her opinions were given little weight. (Doc. 13, at 12-14). The Court will begin with an analysis

of the weight given to Ms. Crowe-Carpenter's opinions because this analysis will bear relevance to Plaintiff's other assignments of error.

*"Other Source" Opinion*

Plaintiff raises numerous challenges to the weight given to Ms. Crowe-Carpenter's opinions, ultimately arguing her conclusions regarding functional domains should have been adopted by the ALJ. (Doc. 13, at 14). As a Certified Nurse Practitioner, Ms. Crowe-Carpenter is classified as an "other source" under the regulations. 20 C.F.R. § 404.1513(d)(1).

The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources". SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio) ("SSR 06-3p does not include an express requirement for a certain level of analysis

that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

Ms. Crowe-Carpenter opined MLM had marked restrictions in attending and completing tasks and extreme limitations in interacting and relating to others. (Tr. 304, 324). Here, the ALJ particularly addressed Ms. Crowe-Carpenter's opinion and stated he accorded it little weight because it was inconsistent with her own treatment records, was insupportable based on the record, reflected subjective complaints, and because Ms. Crowe-Carpenter was not a specialist in psychiatry. (Tr. 18).

Ms. Crowe-Carpenter's opinions contained absolute statements declaring MLM had never shown improvement, however, her second opinion itself contradicts that declaration. (Tr. 304-05, 325). The second opinion shows MLM improved in all but one category. (Tr. 324). Furthermore, Ms. Crowe-Carpenter's mental status examinations show no abnormal findings; instead, she consistently found MLM to be cooperative with normal affect. (Tr. 212, 215, 229, 265, 343, 354, 364-65). Since Ms. Crowe-Carpenter's objective findings do not demonstrate the limitations she asserts, the ALJ could only conclude they were based on the subjective complaints of Plaintiff. (Tr. 18).

Plaintiff also argues since Ms. Crowe-Carpenter was treating MLM, her opinion is entitled to greater weight; however, this is simply not true. *See Marrero v. Comm'r of Soc. Sec.*, 2012 WL 7767583, at *10 (N.D. Ohio) (finding an ALJ can limit "other source" opinion weights even when the "other source" provides a longitudinal picture of Plaintiff's condition). It is clear the ALJ considered Ms. Crowe-Carpenter's opinions and reasonably determined they were not entitled to greater weight. Thus, the ALJ did not err by assigning little weight to Ms. Crowe-Carpenter's opinions.

11

*Credibility*

Plaintiff argues the ALJ's determination that she was only partially credible was in error because her testimony was consistent with the evidence of record. (Doc. 13, at 17).

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ found Plaintiff partially credible because, while the record did demonstrate difficulties with behavior, her reports were "overstated." (Tr. 18). He specifically noted that MLM did have friends and there was no evidence the school asked for MLM to be homeschooled. (Tr. 18, 39, 41, 46). In fact, the suspension notices demonstrate that his behavior was not worthy of expulsion. (Tr. 18, 196). Furthermore, the large gaps in MLM's treatment records and Plaintiff's failure to follow up on counseling with Murtis Taylor indicate that the problems were not so severe as to require consistent medical attention. (Tr. 18). It is obvious from a review of the ALJ's decision that he considered the required factors – particularly activities of daily living and treatment course – and determined that Plaintiff's complaints were not as severe as she alleged.

It is certainly true that Plaintiff can point to other facts which support her argument; however, that does not alter the reasonableness of the ALJ's conclusions that MLM's activities of daily living and her treatment efforts for MLM do not support her credibility. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). From a review of the opinion and the record, the ALJ had substantial evidence to support his conclusion that Plaintiff was not wholly credible.

***Functional Domains***

13

When assessing functional limitations, the ALJ considers myriad relevant factors, including the effects of medication and treatment. 20 C.F.R. § 416.924a(b)(9). *See also* §§ 416.924a, 416.924b, 416.929. The regulations direct the ALJ to examine the information in the child's record about how his or her functioning is affected during performance of all activities when deciding whether the impairment or combination of impairments functionally equals the listings. § 416.926a(b).

In considering the listing of impairments there is no "heightened articulation standard"; rather, the court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006)). However, the court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke*, 2012 WL 568986, at *6 (citing *Reynolds*, 424 Fed. App'x at 415-16); *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision."). The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 Fed. App'x at 411).

The Plaintiff takes issue with the ALJ's determination as to two functional domains: attending and completing tasks and interacting and relating to others. As to attending and completing tasks, she argues Ms. Crowe-Carpenter's opinions, MLM's behavior at school, and reports from MLM's teachers and Plaintiff support a marked limitation in this domain. In support of his decision, the ALJ specifically noted MLM can read a book or watch a movie and remember the major characters and events, has had improved behavior at home, and maintains passing grades. (Tr. 20, 164-65, 199, 265, 364). It is true that reports of MLM's behavior at

14

school shows he was easily distracted; however this distraction is counter-balanced by his ability to maintain average grades. (Tr. 179, 199). Furthermore, MLM's ability to remember events and characters in books or films in which he is interested demonstrates he has less than marked limitation in this area. (Tr. 164-65). Considering the evidence cited by the ALJ and the above determinations regarding Ms. Crowe-Carpenter's opinions and Plaintiff's credibility, the ALJ supported his conclusion of a less than marked limitation in attending and completing tasks with substantial evidence.

As to interacting and relating to others, the ALJ noted MLM has difficulty listening, expressing anger, and keeping friends, and can act out violently at home and at school. (Tr. 21). However, the ALJ also noted that none of these behavioral problems put him at risk for expulsion nor had he been placed on an Individualized Education Program, clear indicators that, his behavioral limitations were not extreme. (Tr. 21, 196). Lastly, the ALJ remarked that although MLM's articulation delays were present, his total language abilities were within normal limits and did not "very seriously" impact his interpersonal relationships. 20 C.F.R. § 416.926a(e)(3)(i); (Tr. 21, 247-50).

The citations provided by Plaintiff in support of her argument demonstrate behavior with a negative effect on MLM's interactions; however, the ALJ reasonably relied on other evidence in the record that show MLM's limitations do not rise to the level of extreme. For example, the ALJ relied heavily on the report of MLM's teacher who stated that, while he had behavioral problems, he was performing adequately in academics, she could understand his speech, and his behavior improved on medication. (Tr. 17, 177-83). In reviewing the opinion in its entirety and the ALJ's specific notations to the record, the undersigned finds he had substantial evidence to support that MLM had a marked but not extreme limitation in interacting and relating to others.

15

**CONCLUSION AND RECOMMENDATION**

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision supported by substantial evidence. Therefore, the undersigned recommends the Commissioner's decision denying benefits be affirmed.

s/James R. Knepp, II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).